IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JERRY E. HARTEL )
)
v. ) No. 3:13-1094
)
NANCY A. BERRYHILL[1] )
Acting Commissioner of Social Security )

# MEMORANDUM

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which Defendant has responded. Docket Entry No. 21. Plaintiff has also filed a reply to the response. Docket Entry 24. This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry Nos. 26 and 27).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **GRANTED**. For the reasons stated herein, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

1

## I. INTRODUCTION

Plaintiff filed an application for DIB on May 7, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 12) at 95.[2] He alleged a disability onset date of June 7, 2009. AR 95. Plaintiff asserted that he was unable to work because of degenerative disc disease. AR 104.

Plaintiff's applications were denied initially and upon reconsideration. AR 95-96. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Frank L. Gregori on April 12, 2012. AR 55. On May 11, 2012, the ALJ denied the claim. AR 40-42. On August 5, 2013, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 33-35), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on May 11, 2012. AR 40-42. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since June 7, 2009, his alleged onset date (20 CFR 404.1571 *et seq.*).

\*\*\*

---

[2] Due to some irregular numbering in the administrative record, and in order to maintain uniformity, the Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page ID number(s) located at the bottom of each page in Docket Entry No. 12, which are preceded in the electronic footer by "Page ID #." All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page ID number(s), which are immediately preceded in the electronic footer by "Page ID #."

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status-post left hemilaminectomy at L4-5, and status post discectomy and laminectomy (20 CFR 404.1520(c)).

*\*\*\**

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

*\*\*\**

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for six hours each in an eight-hour workday, with normal breaks. He needs to have the option to alternate between sitting and standing every 60 minutes. He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to vibration.

*\*\*\**

6. The claimant is capable of performing past relevant work as a store manager and restaurant manager. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).

*\*\*\**

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2009, through the date of this decision (20 CFR 404.1520(f)).

AR 45-51.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

3

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions

of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot

satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a store manager and a restaurant manager and thus concluded that Plaintiff has not been under a disability since the alleged onset date of June 7, 2009. AR 45-51.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) improperly evaluating Plaintiff's credibility and evidence regarding the severity of his impairments; (2) improperly evaluating Plaintiff's impairments under the criteria contained in Listing 1.04; (3) improperly evaluating the opinion of a consultative examining physician; and (4) improperly weighing the opinion of Dr. Michael Bosserman. DE 16-1 at 325-26. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 360.

> Sentence four of 42 U.S.C. § 405(g) states the following:
>
> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court addresses each of Plaintiff's assertions of error below.

**1. The ALJ's alleged mischaracterization of the evidence of record.**

Plaintiff asserts that the ALJ "misrepresented and/or mischaracterized" evidence in the record to undermine the severity of his alleged impairment and discount his credibility. Plaintiff points to three statements in the ALJ's opinion involving (1) evidence of stenosis in a lumbar MRI, (2) Plaintiff's lack of treatment since the alleged onset of his disability, and (3) Dr. Pearline Butcher's assessment of Plaintiff's condition. DE 16-1 at 332-33.

Regarding the former, the ALJ made the following statement as part of his finding that Plaintiff did not meet the requirements of Listing 1.04: "[T]here is no evidence that is characterized by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis." AR 46. Despite this claim, Plaintiff notes that an MRI from November of 2008 revealed "mild to moderate" central spinal canal and bilateral lateral recess stenosis at the L3-4 level. AR 292. As for Plaintiff's alleged lack of treatment, Plaintiff points to encounters at Nashville General Hospital ("NGH") on September 18, 2010, December 1, 2010, and March 2, 2011, all of which took place after the alleged onset date of June 7, 2009. AR 293-307. With respect to the medical source statement ("MSS") completed by Dr. Butcher following an examination in February of 2012, the ALJ stated the following: "Dr. Butcher saw the claimant on only one occasion, and at this time, no testing, laboratory reports, or review of treating records were discussed. The claimant's medical history was provided entirely by the claimant." AR 49. Yet the results of Plaintiff's MRI were clearly discussed during Dr. Butcher's examination. AR 314.

This unequivocally demonstrates that the ALJ made errors in describing the evidence of record. However, the relevant issue is whether the ALJ applied the proper legal standards to his analysis and provided substantial evidence to support his conclusions despite such errors. *See Key*, 109 F.3d at 273 ("Our review is limited to determining whether the findings of the Commissioner are supported by substantial evidence ... and whether the correct legal standards were applied ... The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.") (internal citations omitted). Here, Plaintiff argues that the ALJ's inaccurate factual recitations influenced his ultimate finding that Plaintiff's condition did not meet the requirements of Listing 1.04, which is discussed below. The only other issue raised by Plaintiff is the impact of the ALJ's factual inaccuracies on his credibility determination, which the Court addresses as follows.

The Court first notes that it is the role of the ALJ, and not a reviewing court, to evaluate the credibility of a claimant. *Rogers*, 486 F.3d at 247 (internal citations omitted). The Sixth Circuit has held that a reviewing court "should be particularly reluctant to substitute its judgment of the credibility of the claimant for that of the ALJ, since the ALJ has seen the claimant in the flesh and has had the opportunity to observe his demeanor." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841 (6th Cir. 1991) (citing *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987) (per curiam), *cert. denied,* 484 U.S. 1075 (1988)) (internal quotations omitted). However, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

Here, the ALJ acknowledged that Plaintiff was treated after June 7, 2009 based on his discussion of Plaintiff's treatment both at NGH and with Dr. Butcher, as well as his additional statement that Plaintiff "has sought *minimal* medical treatment for his pain since his alleged onset date." AR 48 (emphasis added). The ALJ further stated that Plaintiff had not received regular treatment from a physician "[s]ince this follow-up visit with the hospital in March 2011[.]" AR 48. Clearly, the ALJ was aware of Plaintiff's treatment after the alleged onset date despite the misleading statement that Plaintiff had not "sought any care or treatment from a physician" since June 7, 2009. Therefore, the Court cannot find that the ALJ discounted Plaintiff's credibility based on a mistaken belief.

Further, notwithstanding the ALJ's misleading statement that Plaintiff "has not sought any care or treatment from a physician" since the alleged onset date (AR 48), the ALJ provided ample justification for discounting Plaintiff's credibility. The ALJ noted that despite the findings from the 2008 MRI, which Plaintiff suggests support a finding of disability, Plaintiff's treating physician released him to regular duty work in February of 2009 and even noted that Plaintiff would be able to "work beyond" a typical eight-hour shift. AR 47, 273. The ALJ also highlighted the inconsistency of Plaintiff's allegations of pain with his own reported daily activities and noted that Plaintiff applied for and received unemployment benefits two years after the alleged onset date (AR 48), a fact that weighs heavily against his claims of disabling pain beginning in June of 2008. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent ... There is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work) (internal citation and quotations omitted); *Siler v. Astrue*, No. 11-391, 2012

WL 2603656, at *13 (E.D. Ky. July 5, 2012) ("When a claimant files for unemployment, he is stating that he is ready, willing and able to work ... Yet, when a claimant files for disability benefits, he is stating that he is unable to work ... Thus, it was reasonable for the ALJ to consider Plaintiff's inconsistent representations to the government in assessing his credibility.") (internal citations omitted).

An ALJ's credibility determination is "essentially unchallengeable." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (citing *Payne v. Commissioner of Social Security,* 402 F. App'x. 109, 113 (6th Cir. 2010)). Plaintiff's reference to a single ambiguous statement in the face of substantial evidence supporting the ALJ's decision to discount his credibility is not sufficient to overturn the determination. This assertion of error is therefore rejected.

**2. Listing 1.04.**

As noted *supra*, Plaintiff argues that the ALJ mistakenly claimed that there was no evidence in the administrative record of spinal stenosis. Plaintiff additionally claims that the overall evidence of record demonstrates that his condition meets the requirements of Listing 1.04, subsection A.[3]

As part of the Social Security Administration's regulations, the Commissioner has crafted a list of impairments containing various criteria that, if satisfied by the claimant, direct the Commissioner to find the claimant "disabled without considering [his] age, education, and work experience." *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1110 (6th Cir. 1986) (quoting 20 C.F.R. § 404.1520(d)). Listing 1.04A involves disorders of the spine and requires that the following criteria be demonstrated by the claimant:

---

[3] Plaintiff does not argue that his condition satisfies the criteria contained in subsection B or C of Listing 1.04.

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § 404, Subpt. P, App. 1. Plaintiff correctly notes that, contrary to the ALJ's statement that there is "no evidence that is characterized by ... lumbar spinal stenosis" (AR 46), an MRI from November of 2008 revealed evidence of spinal stenosis at the L3-4 level. AR 292. Nevertheless, such an error may be deemed harmless unless the claimant "point[s] to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). *See also Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original); *Naylor v. Comm'r of Soc. Sec.*, No. 2:15-cv-2817, 2016 WL 3995733, at *11 (S.D. Ohio July 26, 2016), *report and recommendation adopted,* 2016 WL 4398669 (S.D. Ohio Aug. 18, 2016) ("It is not sufficient to come close to meeting the conditions of a Listing.") (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989)).

Plaintiff attempts to establish that he meets all of the relevant criteria by pointing to office visits on November 7, 2008, December 1, 2010, and February 15, 2012, during which physical examinations revealed reduced forward flexion (AR 282), positive straight leg tests (AR 282, 285, 301, 317), a loss of reflexes (AR 316), and a decrease in range of motion. AR 301, 317. The Court also notes that Plaintiff demonstrated a decreased range of motion during his consultative examination with Dr. Bruce Davis on August 3, 2010 (AR 260), positive straight leg

tests during at least three other office visits between 2009 and 2010 (AR 274-75), muscle weakness (AR 299), and sensory deficits. AR 274-75.

While such evidence suggests that some of the criteria of Listing 1.04A are satisfied, it does not appear that Plaintiff has identified definitive evidence of nerve root compression. Plaintiff relies heavily on the "mild" spinal stenosis finding contained in the 2008 lumbar MRI report,[4] yet such a finding does not necessarily establish the presence of nerve root compression. *See Gliebe v. Astrue*, No. 1:10-cv-002566, 2011 WL 7144817, at *19 (N.D. Ohio Dec. 30, 2011), *report and recommendation adopted*, 2012 WL 275057 (N.D. Ohio Jan. 31, 2012) ("Plaintiff has not produced evidence proving or suggesting nerve root compression but only stenosis ... Spinal stenosis is a narrowing of the spinal column or a narrowing of the openings where the nerves leave the spinal column, whereas nerve root compression is pressure on the nerve."). *See also Barnes v. Comm'r of Soc. Sec.*, No. 12-cv-15256, 2013 WL 6328835, at *9 (E.D. Mich. Dec. 5, 2013) ("[Plaintiff's] x-ray and CT scan show degenerative disc disease and spinal canal stenosis, but there is no mention of nerve root compression in the radiologist's reports."). The record does include evidence of sciatica, which is defined as "pain anywhere along the course of the sciatic nerve," Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 1678 (32nd ed. 2012), and Plaintiff points to evidence that he participated in lumbar decompression therapy (AR 284-85), which, as the term "decompression" suggests, can involve the "relief of pressure on a nerve." Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 475 (32nd ed. 2012). Nevertheless, there is very limited evidence of muscle weakness in the record, which suggests that Plaintiff has

---

[4] Plaintiff claims that the MRI showed "mild to moderate" spinal stenosis (DE 16-1 at 334); however, the interpreting radiologist specifically described the finding as "*mild* central spinal ... stenosis" in the "impression" section of the radiology report. AR 292 (emphasis added). As noted by Defendant, even Dr. Butcher, who Plaintiff saw as part of a "disability examination" (AR 314, 317), noted that the MRI in question revealed only "mild" spinal stenosis. AR 314.

failed to present a "substantial question about whether [he] meets a listing," but has instead offered "a mere toehold in the record on an essential element of the listing." *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (6th Cir. 2013).

Notwithstanding the lack of robust evidence suggesting that all of the criteria for Listing 1.04A have been met, the Court finds that remand is necessary for additional consideration of the evidence of record for the reasons articulated below.

**3. The opinion of Dr. Butcher.**

Plaintiff contends that the ALJ improperly discounted the MSS completed by Dr. Butcher following her examination of Plaintiff in February of 2012. Dr. Butcher's MSS included severe physical restrictions that limit Plaintiff to occasional lifting and carrying of 10 pounds, sitting for no more than three hours, and standing and walking for no more than two hours during an eight-hour workday. AR 308-09.

> The ALJ provided the following justification for discounting the opinion:
>
> [Dr. Butcher's] opinion has been considered, but has been given little weight. Dr. Butcher saw the claimant on only one occasion, and at this time, no testing, laboratory reports, or review of treating records were discussed. The claimant's medical history was provided entirely by the claimant. Additionally, it is assumed that she was compensated for her opinion and that her findings were based primarily upon the claimant's own subjective complaints. Therefore, this opinion has been given little weight.

AR 49. Plaintiff argues that these reasons are "completely baseless" and demonstrate that the ALJ's opinion is not supported by substantial evidence. DE 16-1 at 338. The Court agrees.

The ALJ's opinion clearly contained numerous factual errors that the Court deemed harmless, as discussed *supra*. However, none of the reasons provided for rejecting Dr. Butcher's opinion represent a reasonable basis on which to reject a medical opinion. The ALJ stresses that Dr. Butcher examined Plaintiff on only one occasion, yet the same can be said of Dr. Bruce

Davis, whose opinion following a single consultative examination in August of 2010 was "accorded significant weight." AR 49, 259-61. The ALJ also minimizes Dr. Butcher's findings based on the fact that she was "compensated for her opinion," a statement that could similarly be attributed to Dr. Davis, whose opinion was procured by Defendant through the Department of Disability Services ("DDS"). AR 259. Defendant attempts to distinguish the latter by engaging in intellectual acrobatics, claiming that while DDS physicians are similarly compensated for their opinions, such opinions are less "tainted" than those offered by one-time examiners such as Dr. Butcher because DDS physicians "are paid the same ... no matter how they tend to assess claimants." DE 21 at 12. The Court is thoroughly unpersuaded by such reasoning as it unfairly suggests that the claimant is required to seek out a provider based on the anticipated neutrality of their prior opinions, a burden that is not similarly shouldered by the Commissioner. *See Mullins v. Colvin*, No. 3:13-cv-00226, 2014 WL 1382552, at *6 (S.D. Ohio Apr. 8, 2014), *report and recommendation adopted sub nom.* 2014 WL 4829543 (S.D. Ohio Sept. 29, 2014) ("If the Regulations permitted ALJs to reject medical-source opinions based solely on who asked-or paid-for them (a plaintiff or the Commissioner), the Regulations would frequently deprive the Commissioner of the assistance provided by state agency medical sources and other program physicians and psychiatrists.").

Finally, the ALJ again errs by claiming that "no testing, laboratory reports, or review of treating records were discussed" during Plaintiff's encounter with Dr. Butcher. A simple review of Dr. Butcher's office note indicates that testing and treating records were at least discussed based on Dr. Butcher's reference to multiple MRI reports and the dates on which such studies were conducted. AR 314. Indeed, Dr. Butcher describes the precise findings of both MRI reports, which suggests that she reviewed them as part of her examination. AR 248, 292, 314. The Court

also notes that the ALJ's emphasis on the alleged failure of Dr. Butcher to review relevant medical records rings hollow in light of his decision to accord "a good deal of weight" to the opinion of a state agency physician who did not review any treatment records beyond July of 2004, approximately five years before the alleged onset date. AR 49, 270. As such, unlike Dr. Butcher, the state agency physician was *not* privy to the findings from the November 2008 MRI or any of the accompanying treatment, which undermines the ALJ's decision to favor such an opinion over Dr. Butcher's MSS. *Cf. Blakley*, 581 F.3d at 406 (holding that because a non-examining physician's opinion was rendered before the claimant underwent significant additional treatment, the Sixth Circuit "require[d] some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record.") (citing *Fisk v. Astrue,* 253 F. App'x 580, 585 (6th Cir. 2007)) (internal quotations omitted).

It is true that the ALJ is permitted to reject the opinion of an examining physician without providing "good reasons" as is required for opinions rendered by treating physicians. *See* 20 C.F.R. § 404.1527(c)(2). Nevertheless, "inaccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011) (internal citation omitted). Here, the ALJ not only discounted Dr. Butcher's opinion based on inconsistent reasoning, but also misrepresented evidence to undermine the opinion, which prevents the decision from enjoying the support of substantial evidence. *See Stanfield v. Colvin*, No. 2:12-cv-213-KSF, 2013 WL 3935071, at *3 (E.D. Ky. July 30, 2013) ("[A]n ALJ may not mischaracterize contrary evidence to support a conclusion.") (citing *Cornett v. Benham Coal, Inc.,* 227 F.3d 569 (6th Cir. 2000)). This case should therefore be remanded for additional consideration of the opinion evidence contained in the record.

**4. The opinion of Dr. Bosserman.**

Plaintiff finally argues that the ALJ improperly weighed the opinion of Dr. Michael Bosserman, a treating physician, who opined on February 20, 2009 that Plaintiff could perform "regular duty" work. AR 273. Plaintiff notes that while the ALJ included an accommodation for "alternat[ing] between sitting and standing every 60 minutes" (AR 46), Dr. Bosserman actually opined that Plaintiff should be able to "sit and rest his back ... as needed." AR 273. However, because the Court has found that remand is warranted for additional consideration of the opinion evidence of record, which includes the opinion of Dr. Bosserman, the Court declines to take up this assertion of error.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 16) is GRANTED. The Court hereby REVERSES the decision of the Commissioner and REMANDS this case for further proceedings consistent with this ruling.

An appropriate Order accompanies this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge